IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

In re                                                                                          Chapter 7
                                                                                              Case No. 10-11939-WRS

STEVE D. SANDERS
DEBORAH M. SANDERS,

      Debtors.

## MEMORANDUM DECISION

This case is before the Court on the Bankruptcy Administrator's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(2). (Doc. 24). The Debtors, Steve D. and Deborah M. Sanders, through their attorney Collier H. Espy, orally objected to the motion at a hearing held January 26, 2011 in Dothan, Alabama. The issue underlying the Bankruptcy Administrator's motion is the Debtors' student loan payments and whether those payments constitute special circumstances to get past the presumption of abuse raised under the Means Test. A second hearing was held telephonically on April 6, 2011 to clarify the scope of the Bankruptcy Administrator's objection. For the reasons set forth below, the Bankruptcy Administrator's motion is DENIED.

## I. Facts

On September 30, 2010, Steve D. and Deborah M. Sanders ("the Debtors") filed a chapter 7 case, Case No. 10-11939. (Doc. 1). Along with their petition they filed their Chapter 7 Statement of Currently Monthly Income and Means Test Calculation – Form 22A ("Means Test"). Id. On their Means Test they state an annualized current monthly income of $76,264.32. Id. at ln. 13. The Debtors claim their twenty-three year old son as a dependent on their Schedule I and list their household size as three. Id. For a household of three, the applicable median

family income is $55,433. Id. at ln. 14. The Means Test shows a monthly disposable income of $1,196.91. Id. at ln. 50. The Debtors' 60-month disposable income is $71,814.60. Id. at ln. 51. At line 56, the Debtors list an Additional Expense Claim of $2,041.61 for payments on student loans incurred by their son. The Debtors are either directly or on a guarantor basis responsible for the student loan payments incurred by their son. The total amount to be repaid on the student loans is approximately $236,672.25. Id. at pg. 9.

On December 13, 2010, the Bankruptcy Administrator ("BA") filed her Motion to Dismiss under 11 U.S.C. § 707 because absent the deduction for the student loan payments, the Debtors' income raises a presumption of abuse under the Means Test. (Doc. 24). At a hearing on January 19, 2011, this Court took the issue regarding the student loan payments under advisement. Briefs were submitted by both parties to the issue. A second hearing was held telephonically on April 6, 2011, where the BA waived her right to raise a procedural issue, thus limiting the scope of her objection to the substantive legal issue.

## II. Conclusions of Law

### A. The Law

Under 11 U.S.C. § 707(b)(2), a chapter 7 debtor's bankruptcy must be dismissed or converted to a chapter 11 or 13 case when a presumption of abuse arises under § 707(b)(2)(A)(i). 11 U.S.C. § 707(b)(2). Under § 707(b)(2)(A)(i)(II), the debtor's current monthly income, reduced by amounts stated in other parts of § 707(b)(2)(A), and multiplied by 60 must be less than $11,725. If it is not, then the court "shall presume abuse exists." 11 U.S.C. § 707(b)(2)(A)(i). However, the presumption of abuse may be rebutted by the debtor's demonstration of "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional

2

expenses or adjustments of current monthly income for which there is *no reasonable alternative*." 11 U.S.C. § 707(b)(2)(B)(i) (emphasis added).

It is the debtor's responsibility to prove there exist "special circumstances . . . for which there is no reasonable alternative." On the procedural side, the debtor must meet the requirements of § 707(b)(2)(B)(ii), which require: (1) documentation for the expense or adjustment; (2) "a detailed explanation of the special circumstances that make the adjustments to income necessary and reasonable;" and (3) such information must be provided by the debtor under oath. In re Hammock, 436 B.R. 343, 352 (Bankr. E.D.N.C. 2010).

Once the procedural burden has been met, the courts then look to whether there exists a special circumstance creating an expense for which there is no reasonable alternative but to pay to rebut the presumption of abuse. This examination must be done on a "case-by-case basis." In re Fonash, 401 B.R. 143, 147 (Bankr. M.D.Pa. 2008); In re Champagne, 389 B.R. 191, 200 (Bankr. D.Kan. 2008). As a result of this fact-specific inquiry, courts have divided largely into three camps when it comes to addressing the issue of whether student loan repayment qualifies as a "special circumstance" under § 707(b)(2)(B).

In the first camp are courts who have found that student loans can never qualify as "special circumstances" and therefore, cannot be considered as an "other necessary expense" for the purposes of determining abuse under the Means' Test. See Id. Those courts reason that a debtor's circumstances need to be "reasonable and necessary" to be similar to the examples provided by Congress in the Code in order to qualify as special. Id. at 354 (citing In re Siler, 426 B.R. 167, 172 (Bankr. W.D.N.C. 2010) (citation omitted). Thus, the expense ultimately needs to be the result of situation that is extraordinary, outside the control of a debtor, or always

3

unanticipated. Id. (citing Siler, 426 B.R. at 172). This creates a very high standard for a debtor to achieve.

In applying this high standard, the courts in camp one look at the particulars of student loan repayment. These courts note that debtors often advance the argument that the non-dischargeable nature of student loans is what triggers the special circumstances. Id. at 355. These courts find that simply being classified as non-dischargeable does not meet the high standard intended by Congress. Rather, if a student loan were provided this additional protection, it would essentially give a student loan a priority status not provided for in the Bankruptcy Code. Id. (citing Siler, 426 B.R. at 175; In re Vaccariello, 375 B.R. 809, 815 (Bankr. N.D. Ohio 2007)). These courts concluded that there is nothing "special" about student loans and therefore, they do not qualify as special circumstances.

A second camp of courts suggest that they are open to student loan repayments constituting special circumstances, but did not find special circumstances because of the facts before them or for procedural reasons. See In re Womer, 427 B.R. 334 (Bankr. M.D.Pa. 2010); In re Fonash, 401 B.R. 143 (Bankr. M.D.Pa. 2008). In Womer, the court noted the "exceptional burdens placed on the debtor by reason of the obligation of the student loan" as the crux for other courts finding student loan repayments constitute special circumstances. Id. at 336. However, the debtors in Womer did not provide any evidence of exceptional burdens or an inability to repay; rather they simply stated they had student loan obligations and a general difficulty in paying their expenses. The Womer court concluded that absent something more specific, the court could not find that special circumstances existed. Id. In Fonash, the court did not reach the substantive issue because it found that the debtor had not even met the procedural requirements under § 707(b)(2)(B). Fonash, 401 B.R. at 148. Both courts recognized the need for the debtor

4

to document the expense that would constitute special circumstances. Without this minimum showing, the courts did not need to further examine the trickier question of if that situation is a special circumstance.

In the third and final camp, the courts have found that depending on the facts, student loan repayments can constitute special circumstances. See In re Haman, 366 B.R. 307 (Bankr. D.Del. 2007); In re Templeton, 365 B.R. 213 (Bankr. W.D.Okla. 2007); In re Delbecq, 368 B.R. 754 (Bankr. S.D.Ind. 2007); In re Knight, 370 B.R. 429 (Bankr. N.D.Ga. 2007). These courts reasoned that "'special circumstances' requires 'a fact-specific, case-by-case inquiry into whether the debtor has a meaningful ability to pay his or her debts in light of an additional expense or adjustment to income not otherwise reflected in the means test calculation.'" Knight, 370 B.R. at 437 (citing Delbecq, 368 B.R. at 758-59). To these courts, a special circumstance is one that if the additional expense is not taken into consideration it creates a "demonstrable economic unfairness" that prejudices the debtor. Id. at 437-38.

In support of their position, the courts in the third camp look first to the statutory language of § 707(b)(2)(B) itself. See Haman, 366 B.R. at 313 ([W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)); Delbecq, 368 B.R. at 756. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then . . . 'judicial inquiry is complete.'" Id. (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (quoting Rubin v. United States, 449 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981))). In the event the statute is ambiguous, then the courts can turn to the legislative history to determine the intention of the drafters. Id. (citing Ron Pair,

5

489 U.S. at 242-43 (internal citations omitted)).  Here, the term "special circumstances" is not defined in the Code, so the courts turn to the legislative intent.

First, these courts have noted that nothing in the plain language of § 707(b)(2)(B) requires that the special circumstances be of an involuntary nature: the only clear requirements under § 707(b)(2)(B) are that the debtor bears the burden to prove a special circumstance that leaves the debtor with no reasonable alternative but to incur the expense or have the income adjustment.  Id. (citing In re Graham, 363 B.R. 844, 850-51 (Bankr. S.D. Ohio 2007)).  Indeed, some of these courts have noted that even the involuntary nature of the examples provided in § 707(b)(2)(B) is questionable – "[a] serious health condition could stem from a self-inflicted injury, and an individual called to active duty could have voluntarily enlisted as a reservist."  Id. (quoting In re Thompson, 350 B.R. 770, 777 (Bankr. N.D. Ohio 2006).  The focus is very much on whether circumstances and expenses exist to which the debtor has no reasonable alternative but to pay.  The courts also focus on the words "such as."  This signal is routinely used as an introduction to a list of examples.  Id. (citing In re Sparks, III, 360 B.R. 224, 230-31 (Bankr. E.D.Tex. 2006; In re Lenton, 358 B.R. 651, 661-62 n.22 (Bankr. E.D.Pa. 2006)).  Moreover, the words "such as" imply an intent to provide a non-exhaustive list of illustrations and not an intent to limit the application of the statute to just the list.  Id.

The legislative history of § 707(b)(2)(B) further supports these courts view of the what the statute's language clearly says.  According to the Congressional Record on the amendment, examples of special circumstances were not even provided until Senator Jeff Sessions "proposed the amendment to clarify 'that the special circumstances exception . . . includes a debtor with a serious medical condition or a debtor on active duty in the military.'"  Id. at 314 (citing H.R. Rep. No. 109-31(I), at 9 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 96).  Senator Sessions

6

did not intend to limit judicial discretion or define special circumstances, but simply to protect those "incapable of paying back their debt due to military service or a serious medical condition" from being required to do so. 151 CONG. REC. S1834-01, S1845-46 (2005) (statement of Sen. Sessions). The court in Haman found that not only did the legislative history show that the examples are non-exhaustive, but also Senator Sessions' intent demonstrates that special circumstances do not have to be of an involuntary nature. Haman, 366 B.R. at 314.

Relying on this view of "special circumstances," three cases stand out for finding that student loan payments constitute "special circumstances." In Haman, the debtor was a co-obligor on her son's student loans and the son was unable to make payments due to a mental illness. The debtor could not discharge the debt because it did not meet the high standard of "undue hardship" and the only other way to stop making payments would be to pay-off the debt in full. Id. at 315. The court found that based on its understanding of "special circumstances" the debtor had met her burden: she had to repay the student loans and there was no other reasonable alternative to paying them. Therefore, they constituted "special circumstances."

In Delbecq, the debtor was a teacher whose monthly student loan payment was greater than her disposable income. Noting no other major factors, the court said the debtor was without a reasonable alternative to pay because the debt was non-dischargeable leaving her with only deferment as an option if the case were dismissed, meaning the debtor would incur even more debt while the interest accrued on the balance of the student loans. Therefore, the debtor had shown that she had no other reasonable alternative but to pay the student loans and therefore, they were "special circumstances." Delbecq, 368 B.R. at 759. Accord, Templeton, 365 B.R. 213 (Holding that student loan debt constituted a "special circumstance" when it could not be discharged, consolidated, or deferred.).

7

Knight involved a slightly different scenario – the debtor was contesting the projected disposable income calculated for their chapter 13 plan payments and wanting a finding that their student loan payments constituted "special circumstances." Knight, 370 B.R. 429. The court in Knight noted that "[p]ublic policy encourages the pursuit of higher education because it benefits not only the individual, but society as a whole;" however, many individuals cannot afford higher education, either public or private, without some form of financial assistance. Id. at 438. For that reason, student loans are available to individual of all means and backgrounds. But, the cost can be in the tens or hundreds of thousands of dollars with a structured repayment period ranging from ten to 30 years. Id. at 439. Moreover, student loans are non-dischargeable unless a debtor meets the high burden of showing "undue hardship." For these reasons, the court in Knight, actually found that these characteristics of student loans are what make them unique and therefore "special circumstances." Id.

The Court finds the reasoning of the courts in the third camp more persuasive and determines that depending on the facts of a case, student loans payments may qualify as "special circumstances." In addition, a review of the Senate Judiciary Committee Reports on § 707(b)(2)(B) further convince this Court that student loan payments can constitute "special circumstances." According to the Committee Report,

> In order to protect debtors from rigid and arbitrary application of a means-test, section 102 also provides in some cases where the presumption applies the debtor may be able to demonstrate "special circumstances" that justify additional expenses or an adjustment to the debtor's income. The Committee adopted the "special circumstances" standard, rather than the "extraordinary circumstances" standard included in the Conference Report to accompany H.R. 3150 to provide a different standard of when a debtor may overcome the presumption of abuse. . . .
>
> The debtor's ability to overcome the presumption of abuse must be based solely on financial consideration (i.e. adjustment to income

> or expenses required by special circumstances) and not on factors unrelated to a chapter 7 debtor's ability to repay his or her debts. The Committee believes that the relief sought by a debtor who files for bankruptcy is financial in nature and the debtor's right to obtain preferential relief under the special circumstances provision should be assessed based on financial considerations only. In addition, special circumstances adjustments must not be used as a convenient way for debtors to choose a more expensive lifestyle. The special circumstances provision must be reserved only for those debtors whose special circumstances require adjustments to income or expenses that place them in dire need of chapter 7 relief.
>
> . . .
>
> [T]he new section 707(b) contains numerous procedural safeguards in order to ensure that the individual circumstances of each bankrupt will be considered before he or she is dismissed or converted to chapter 13.

S. REP. NO. 106-49, at 6-8 (1999) (emphasis added). The Court notes that the Committee specifically replaced "extraordinary" with "special" because the Committee wanted to apply a different standard to rebut the presumption of abuse. It is clear from the legislative history that the standard is "special" and not "extraordinary" as the courts in the first camp suggest. Under this lower standard, this Court thinks it is possible for student loan obligations be an expense that can rebut the presumption of abuse.

Moreover, if one looks at the definition of "special", it has been defined, in relevant part, as "distinguished by some unusual quality." WEBSTER'S NEW INTERNATIONAL DICTIONARY, UNABRIDGED 2186 (Philip Babcock Gove, Ph.D. et. al. eds., 3rd ed. 1986). As the court noted in Knight, public policy encourages pursuing higher education because of its benefits to the individual and society as a whole. Knight, 370 B.R. 438. As a result, individuals incur debt in the form of student loans in order to have access to higher education, with a repayment period of ten to 30 years. Id. The court described these as unique characteristics and this Court thinks these are unusual qualities and therefore fall under the definition of "special."

The "unusual quality" of the student loans also addresses the additional concern raised by the courts in the first camp. Some of these courts worried that granting debtors the ability to have their non-dischargeable, general unsecured student loans considered a "special circumstance" would open the flood gates to allow other non-dischargeable, general unsecured debts the same status. See, e.g. In re Hammock, 436 B.R. 343, 355 (Bankr. E.D.N.C. 2010). This Court notes that aside from student loans, other non-dischargeable debts are either already provided for under the Mean's Test (i.e. domestic support obligation) or are not, but have to meet some morally culpable standard to be excepted from discharge. The moral culpability standard for those other non-dischargeable debt is a way of saying that individuals who are morally culpable cannot escape their responsibilities as a result of their wrong doing simply by filing bankruptcy. Student loans are not morally wrong; society encourages education as a means of advancement. Therefore, student loans have an "unusual quality" about them that makes them distinctly different from the other non-dischargeable debts not considered in the Means' Test calculation. An abuse of the system would not occur by considering student loans as special circumstances.

### B. The Sanders' Case

Having determined that student loans can constitute "special circumstances," the Court now turns to the facts of the Debtors' case to see if they have carried their burden and rebutted the presumption of abuse. The Debtors are either direct or co-guarantors on these student loans, incurred for the benefit of their son's education. The Debtors have represented to the Court through their pleadings that their son is employed, but making only $35,000 per annum and thus could not afford to make the $2,000 plus payments per month on his own. As such, being also

10

obligated for the loans, the Debtors' have been making payments as their son cannot make the payments.

The BA has pointed out that Congress has provided for discharge of student loan debt if the debtor can prove undue hardship under 11 U.S.C. § 523(a)(8). (Doc. 28, pg. 6). However, that would require either the son to enter bankruptcy and prove undue hardship simply on the basis that he cannot pay his student loans or that the parents attempt to get out of paying their main unsecure creditor by trying to meet the incredibly high burden of proving undue hardship.

This burden is high for two reasons: § 523(a)(8) is limited only to government-funded student loans and the body of case law that has developed on the matter has required debtors to prove that their financial state of affairs will continue for a significant portion of the repayment period. E.g., Brunner v. New York State Higher Educ. Services Corp., 831 F.2d 935 (2nd Cir. 1987). The son here is young and with his first job, so proving that over the long term of his loan repayment period he will not ever see a financial increase will be near to impossible. Likewise, this suggests that as his pay increases, he could help his parents pay more in the future, thus undermining their own argument for undue hardship. Therefore, proving undue hardship does not appear to be a reasonable alternative for the Debtors.

Additionally, the Debtors could seek consolidation, forbearance, or deferment of the student loans while in a chapter 13 plan, or have their case dismissed. However, this Court does not think these alternatives are reasonable. If the case were dismissed or the loans placed in forbearance or deferment, the result is the same – the Debtors would see themselves incurring more debt on the student loans as either of these three outcomes would most likely delay or reduce their monthly payments on the student loans, thus dragging out the repayment period and allowing the interest to accrue. The Court does not think that imposing additional debt on a

11

Case 10-11939    Doc 31    Filed 07/12/11    Entered 07/12/11 08:28:52    Desc Main
Document      Page 11 of 13

debtor is reasonable. See, e.g., In re Knight, 370 B.R. 429 (Bankr. N.D.Ga. 2007); In re Delbecq, 368 B.R. 754 (Bankr. S.D.Ind. 2007).

From these facts, it appears to the Court that the Debtors' have no reasonable alternative but to pay the student loan payments. Moreover, their monthly disposable income is only $1,196.91 with a monthly student loan payment of $2,041.61 (Doc. 1, Form 22A, ln. 50, 56). As the Senate Committee report states, the courts must look only to financial considerations to find special circumstances for a debtor in dire relief of a chapter 7 and the special circumstances exception is not meant to let a debtor live a more expensive lifestyle. See, S. REP. NO. 106-49, at 6-8 (1999). The Debtors' student loan payments are purely a financial consideration and from the facts, one that has strongly contributed to their need for chapter 7 belief. The Court does not think student loans equate to an expensive lifestyle choice, but rather a means to afford an education that few can afford to pay for outright. Public policy supports higher education and student loans. Therefore, the Court thinks that based on the facts in this case the Debtors' have proven their burden of showing that their student loan payments constitute a special circumstance for which there is no reasonable alternative.

## CONCLUSION

For the reasons stated above, this Court finds that the Debtors' have shown that their student loan payments constitute special circumstances under 11 U.S.C. § 707(b)(2)(B) and therefore, rebut the presumption of abuse under the Means' Test. Thus, the Court will DENY the Bankruptcy Administrator's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(2) by way of a separate order.

Done this 11th day of July, 2011.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Collier H. Espy Jr., Attorney for Debtors
Teresa R. Jacobs, Bankruptcy Administrator
William C. Carn III, Trustee